When you're ready. Thank you. May it please the Court. My name is Ralph Weiser. I represent the appellant, Michael Baldoni. I'd like to reserve eight minutes for rebuttal. Your Honors, this is an ERISA case. Mr. Baldoni, after receiving Social Security disability benefits from 1990 through 1996, returned to work for Gaylord Industries. He was employed as a computer programmer on the turret. Can you tell me exactly what kind of job that is? I can't tell what that job is. Well, as I understand it, Your Honor, it is some combination of a job that requires concentration, precision, and accuracy on the one hand. To do what? What is he doing? Well, he's inputting information, as I understand it, for the turret to fabricate and the lathe to fabricate properly. So he's writing programs for turret machines, turret But he also acts somewhat clerically in that he, as I understand it, he inputs the information as well. It's a sedentary job. That's true. Right. Go ahead. In any event, he was employed between 1997 and approximately February 6, 2001, at which time his internist, Frank Rosenblum, determined that he could no longer perform work. Mr. Baldoni filed an application for short-term disability benefits, which was allowed. He filed another application for Social Security disability benefits, which was allowed. And after his short-term disability benefits were exhausted, he filed an application for long-term disability benefits from UNAM. This case was tried to the District Court on cross-motions for summary judgment. The District Court determined that the plan administrator, UNAM, had properly denied Mr. Baldoni's application for long-term disability benefits. This appeal was filed in the Ninth Circuit. You review the District Court's determination de novo, and I believe it's proper that you review this appeal de novo as well, based on a conflict of interest, based on recent authority I cited to the Court in a 28-J letter yesterday, or alternatively, for an abuse of discretion. If you review it either way, Mr. Baldoni is entitled to prevail. I haven't seen that letter yet, but what is the thought of that review as less deferential? Yes, Your Honor. Go ahead. No, have you argued conflict of interest in your brief? I did not see that. I did not. I argued that the determination should be subject to heightened scrutiny under the Hangarder case, which is not an aristic case, but which is a case about findings of fact made concerning the manner in which UNAM Provident processed long-term disability benefits, and was a bad faith case out of California in which the jury determined that UNAM Provident processed these claims in a way that constituted a conflict of interest. I have other ERISA cases from the Supreme Court and from the Ninth Circuit in support of the less deferential review. Did you call that proposition to the attention of the district court as to the district court is that there was a conflict between the plan and the summary plan description, and that under applicable case law, the district court should exercise heightened scrutiny. Your Honor, the abuse of discretion is outlined in my brief. I would say all three, Your Honor. Well, maybe I can talk to you about the record then. Okay, would you repeat it? I'd be glad to respond to that, Your Honor. If you review the UNAM Provident denial letter in the record, you will see that it is simply a mechanical recitation of its version of the medical history without any explanation. So, it recites the definition of disability, which is a form that UNAM Provident and other long-term disability carriers use. It has the text of a medical history that the claims examiner chooses to present, and then it says there are no restrictions and limitations which prevent Baldoni from performing his work as a turret and lathe computer programmer without any explanation. But they also, I don't know if it's in that letter, but they, meaning UNAM, also rely on the opinion of a doctor, right? Well, Your Honor, that's interesting. Mr. Baldoni presented with anxiety and depression. He's under the care of a psychiatrist named Delville. He's seen a psychiatrist over a period of time for very troubling issues, which related not only to his debilitating medical conditions, but also to events in his family, such as the recent death of his two brothers, his mother's cancer, his fatigue, his constant pain, and the like. And UNAM did not have a physician review Dr. Delville's notes. UNAM had a registered nurse review Dr. Delville's notes. The registered nurse was not a psychiatrist and said that she was unable to ascertain the restrictions and limitations he had psychiatrically. The denial letter does not refer in any meaningful way to Mr. Baldoni's anxiety and depression, nor did the plan in accordance with the Ninth Circuit's suggestions in Booton and in Jordan have the matter reviewed by a psychiatrist for sent out for a more complete explanation from Dr. Delville. Although Dr. Delville's notes were sufficient, I would submit, to establish that he was disabled psychiatrically, the final sentence of Dr. reason he was disabled from performing work, but that the anxiety and depression that Dr. Delville referred to in his summary were becoming the greater reason for his disability. Now, the plan did have, according to the plan, a cardiologist review records regarding Mr. Baldoni's chronic obstructive pulmonary disease, his pre-existing heart prostheses, surgeries, and other matters relating to cardiology conditions, but if you review the excerpt of records, you'll see that the cardiologist reviewed a one-page summary of the medical records from the claims examiner, but there's no indication that the cardiologist actually reviews Dr. Rosenbloom's, Mr. Baldoni's internist records. The claims examiner says to this apparent cardiologist, I'm going to give you Dr. Rosenbloom's records in a disc, and as a matter of fact, Dr. Rosenbloom provides his records on a disc, and so it's necessary to actually print out the records from the disc to be able to review them. There's no indication that whoever reviewed these records actually reviewed Dr. Rosenbloom's notes or records, and as a matter of fact, if you look in the excerpt of record regarding the apparent cardiologist review... Why do you keep referring to him as an apparent cardiologist? Because, Your Honor, I looked at the signature of the doctor who reviewed the records, and there are two or three slides at the end of this summary that he was given by the claims examiner, which consists of two pages in the records, one page of medical history, and I can't, myself, determine that he's a medical doctor, nor is there any curriculum vitae or resume in the record which provides his qualifications. So, I must take it on faith that he was, in fact, a cardiologist. I see. Do you disagree that his name is Dr. Thomas Hashway? I can't, Your Honor, I don't mean to be supercilious, but I can't make out his name, and, okay. Did any of Baldoni's own doctors take a cure for disabled people? I believe they did, Your Honor, because he had irreversible chronic obstructive pulmonary disease. Now, which one says that permanently disabled is a joint ORU? I don't recall any doctor using that language, permanently disabled. Was he permanently disabled in the opinion of any one of his doctors? No, that's not the question, Your Honor. The question is whether... Did any doctor say that? That he was permanently disabled? Yes. I don't recall a doctor saying he was, using those words, permanently disabled, but, again, that's not the issue. Tell me what the issue is. The issue is whether, under this plan, he was prevented from performing his own occupation for the elimination period, which was either 60 or 90 days. What's the elimination period? The elimination, this is how this plan worked. If I'm Baldoni, I file an application for disability benefits. According to the plan, I have an elimination period before I can actually receive benefits. And the elimination period is usually 60 or 90 days. If I'm disabled longer than the elimination period, I'm entitled to receive disability benefits. And, as a matter of fact, when Baldoni applied, he'd been disabled since February 7, 2001. He'd received six months of short-term disability benefits, which easily exceeds the elimination period. But let me understand the policy. Under the terms of the policy, he needs to show that he is entirely disabled from performing the functions of his job, but he's not required to show that he is entirely and permanently disabled, such that, for example, you can come back in a couple of years and say, you look healthy to us and we're no longer going to pay these benefits. That's very close. The latter part is. What the plan language says is that he needs to show that he's unable to perform each of the material duties of his job. Not all of the material duties, but each of the material duties. There's no requirement for permanent disability. This plan is a safety net. That's the point I'm interested in. Yeah, it's a safety net. That is to say, if he gets better, he's no longer entitled to these benefits. So what needs to be shown here is the extent of disability, but not the permanence of the disability. That's correct, Your Honor. That's correct. These plans exist for those who are temporarily disabled as well as. . . Temporarily, but long-term. Yes, that's right. Now, you've asked for eight. You've saved about $445. Why don't we hear from the other side, and then you'll have quite a bit of time to respond. Thank you. Yeah. Good morning, and may it please the Court. I'm Dan Lindahl, representing the Appellee Unum Provident. Plaintiff challenges Unum's denial of his claim for long-term disability benefits. We ask the Court to affirm the district court's judgment in favor of Unum Provident. Because the plan indisputably conferred discretion on Unum Provident as the claim's administrator, Unum Provident's decision is reviewed for abuse of discretion. What about the conflict of interest point? The conflict of interest point has been raised this morning for the very first time. It was not raised in the district court. And the authorities cited in counsel's letter faxed to the court yesterday are all of rather — I won't say they're all ancient. They all predate the briefing in this case. They include cases such as the Supreme Court's decision in Nord and this Court's decision in Taft, which is indeed ancient. I believe that's 9F3rd. Well, we may be moving from ancient to future. As you may or may not be aware, this Court has just heard en banc an argument in a case called Abati, A-B-A-T-I-E, in which the question of conflict of interest and standard of review in a recent case was at issue. If that case comes down with something that might materially alter the standard of review, what should we do? That is to say, materially alters it in the sense of making review less deferential. If that turns out to be the answer, what should we do? Well, Your Honor, given that in this case there was no — they didn't argue in this case at any point that there was any conflict of interest that tainted the administrator's decision. They didn't argue that the language didn't confer discretion clearly, as the claimant did in Abati. There's no issue here to be — you know, there's no basis for remand to the district court to say, review it under a different standard. They didn't argue for one. Well, except — and maybe this is Judge Fletcher's point, but except that, you know, the proposition that an appellant can't raise issues for the first time, you know, either in a reply brief or an oral argument, has an exception. That exception is if, you know, the law has changed. And if the law does change or is changed by Abati, then under that exception it might be possible and may be proper to apply the new standard, wouldn't it? Well, it's an interesting point. In Abati, you know, the issue of the retrospective application of whatever the court might do wasn't raised. And so I don't know what the court might do as far as — But the usual rule is that, you know, law or even new law applies to all cases that are currently pending on appeal. Well, Your Honor, it would be — yes, it would apply had there been any contention here that a different standard of review should apply. But the standard of review simply was not an issue in the district court. As Abati proved, parties that wish to raise that point raise it. And those who don't wish to raise it do not. And so the district — it would be seemingly unfair to the district court to send this back and say, do it again, you erred by failing to apply a standard of review that wasn't urged upon you and wasn't even raised at all by the appellant. Okay. Well, that — we may or may not have to jump off that bridge when we come to it. Depends on what Abati might say, I guess. Okay. Let me ask a question while I still remember it. This is something I didn't even think about until your opponent argued or mentioned it in answer to Judge Noonan's question. That is, how do we know that Thomas Hashway is a cardiologist? Well, I guess because we say he is. The same way we know that Dr. Rosenblum is a medical doctor. So it's a representation of unum in the brief? Is that what it amounts to? Well, it's — the documents — I noticed the document doesn't — I find it as hard as counsel does to read his signature, but it doesn't say, you know, M.D., cardiology or anything like that. Just a signature, right? His signature, yes. He is represented to be a board-certified cardiologist. But there's something — but there's nothing in the record that identifies him as a cardiologist? But it's your representation that he is. Is that right? Yes. All right. Now, assuming he's a cardiologist, why would you have a cardiologist, you know, opine on pulmonary function? Well, we had a cardiologist review it because Dr. — or rather, Mr. Baldoni's physician said the disabling condition was cardiomyopathy, a cardiac condition. So it seems reasonable to have a cardiologist — But he didn't give any opinion in the area of cardiology, did he? No, he doesn't specifically address the cardiac conditions because it seems that, in fact, after looking at the records, what appears to be the main contention is this shortness of breath question, the COPD problem that was revealed by the pulmonary function test. And he says that you have — there's evidence here of COPD, chronic obstructive pulmonary disease, but not that it has progressed to the point of being disabling. But he's not an expert, isn't he? What do you call that specialty? People, you know, examine lungs and — Pulmonologist. He's not a pulmonologist, right? He is not, nor are any of the doctors who presented evidence in support of Mr. Baldoni's claim. Well, except that, you know, if you're a treating physician, presumably, you know, you looked into the specific condition a little more in detail, so you have more of a basis of rendering some kind of opinion, as opposed to looking at a two-page summary of a medical history, right? Well — By a non-expert. I guess I disagree that the doctor reviewing this file looked at a two-page summary. He had available to him all of the treating physician's records. And so it's — But there is no evidence that he actually looked at it, is there? Only in that he — This is his job. He was provided those records. He was asked to form an opinion based upon this submission. Well, but, you know, it is his job. But we do have the note from — the memo from Ms. Yeager, who, incidentally, you identify as a registered nurse. The piece of paper I have here in front of me just gives her name, so I guess I'm supposed to take that on faith, too, that she's a registered nurse. But she says, the records from Dr. Rosenblum were received on floppy disks and have been copied. The disk is attached to the claim. If you wish to review them in that format, the information in the file is difficult to follow, as the physician is documenting. That's what she says. And he doesn't say, well, I printed this out and I've read. He just has this four-line handwritten note referring only to lung function. And we're supposed to assume from that that he printed these out or read the file that she says is difficult to read? Yes, Your Honor. I know of no reason not to make that assumption. He was asked to review the records and come to a conclusion, and he did. What about the — well, you should know of no reason. What about the fact that there are lots of cases that have rejected his opinion, right? I'm sorry, Your Honor. You're not familiar with those cases? Lots of reported cases where Dr. Hashway's opinion has been rejected. No, I'm not familiar with those, Your Honor. I can't respond to that. Westlaw will turn them up. Okay. But, again, let me go back to what these documents show. I mean, this case reminds me of this Court's decision in the Jordan case where the plaintiff argued — I'm sorry. Give me the name. The what case? That's Jordan v. Northrop Grumman. Okay. That's all I need. That's okay. Jordan. Where the plaintiff argued, I have fibromyalgia. I have fibromyalgia. I have fibromyalgia. But didn't present evidence of the extent to which that condition rendered her disabled. And that's what we have here. We have evidence that Mr. Baldoni has medical problems. But if these medical problems are disabling, why is he not even under the care of a pulmonologist, much less have a pulmonologist say, Mr. Baldoni's lung problems render him unable to perform this sedentary job that he does working on metal fabrication equipment? Well, I recall having read in the record evidence of a — I'm not a doctor, so I can't tell you exactly the medical terminology for it, but Dr. Rosenblum apparently referred him out for a lung test, which was, you know, went down the narines and tested and so on. So it's not as though he did not have his lungs checked out by a specialist. That's correct, Your Honor. So that's in the record. That is in the record, that he had diagnostic testing. Yeah. But he's not under the treatment of a pulmonologist. And that diagnostic testing, he had it, and nobody's saying he's disabled by this condition. Again, it — Well, I'm not sure they're not saying that he's disabled by this condition, because the contention is, and there's some documentation in the record, that among his sort of multiple symptoms that, taken together, he contends are disabling, is a persistent shortage of breath, which sounds to me like a lung problem. Yes, it is a lung problem. And there is the one diagnostic test showed, I believe in May of 2000, that he has chronic obstructive pulmonary disease, shortness of breath. There it is. Something my father had 30 years and worse. So that by itself is not disabling any more than saying I have X condition. X condition may at this end of the spectrum be disabling and may at this end of the spectrum be not disabling. And somebody needs to say where Mr. Valdoni falls on that spectrum. And nobody did. And then when Unum denies his claim, he says for the first time, I'm disabled by things you don't even know about, he put in his letter. And he said, and hold off in deciding my appeal until I give you some more information. And so Unum did. And we waited and we waited. And that information never came. And we said, we haven't heard from you. We've been waiting. Where is this additional information? Where is the pulmonary function test you told us to wait for? Because that was going to show us the condition of your lungs. And he never submitted it. So we finally went ahead and decided to claim it. It doesn't sound like he had evidence to support his claim of disability based on a pulmonary condition when he asked us to wait for it. He either had the test and chose not to give it to us or chose not to have the test. We don't know. He didn't tell us. May I answer any of the questions this morning? In that event, we ask the Court to affirm the judgment of the district court. Thank you. Thank you. Your Honors, at page 390 of the excerpt of record is the attending physician's statement to Unum at the outset of Mr. Baldoni's claim. The attending physician, Dr. Rosenblum, states that Mr. Baldoni has dyspnea, hypertension, tachycardia, shortness of breath, and chest pain, that he is unable to work. Now, I've got the form here in front of me, and I'm having a little trouble with the handwriting. Where does he say unable to work? He says dyspnea with any exertion, unable to perform physical work. Date restricted and limitations began 4-2-0-1. Okay, and I'm reading above this, number three, I think it's a three, information about patient's ability to work. This information is critical to an understanding of your patient's condition. Part of the problem is this fax alert. Has the patient been released to work in his or her occupation? No. In any occupation? No. If the patient has demonstrated a loss of function, please provide restrictions and something, and the date they began prescribed, and then that's his handwriting. What is that word? Dyspnea, D-Y. And then I don't understand that. Maybe now, I guess now. Okay. But that's your sort of – that's the bottom line you're relying on for a doctor's certification that he's unable to work? No. Oh, okay. Well, first of all, in that context, unable to do physical work could mean he can't do physical labor, but his job is a sedentary job. It doesn't involve physical labor, right? It involves very little physical labor as a computer programmer. So, you know, that restriction wouldn't seem to disable a computer programmer from doing a, you know, sit-down job. Well, Mr. Baldoni actually has his own statement. He provides a statement in a telephone interview to UNUM. He provides his own statement on the claimant's statement form to UNUM at the outset of his claim, and he explains that. What about, you know, doctor statements, though, about being disabled? Well, doctor – I mean, counsel for UNUM is correct. This man suffers from a variety of conditions, and in combination, they are disabling. So what UNUM has forgotten or ignored or diminished or demeaned is the report of his treating psychiatrist, Dr. Belville, who talks about ongoing low mood, healthlessness, lack of ability to concentrate, depression, anxiety, symptoms which prevent him from doing his job in combination with the other medical conditions he has. Does the psychiatrist say that? Well, let me – the psychiatrist's report is at page 192. Now, at page 192, the psychiatrist summarizes his encounters with Mr. Baldoni, talks about the presenting problems regarding the events of his life, says that he suffers from symptoms of anxiety and depression. His symptoms included low energy, low mood, sense of helplessness and hopelessness, and discouragement as well as some trouble with concentration. This was felt to be related to multiple stresses in his life, including the death of his two brothers and his own vocational and economic uncertainty related to his significant health problems. And he – the psychiatrist then moves forward during his encounters with Mr. Baldoni, which you see at page 192, and concludes, initially, the major reason for Mr. Baldoni's disability seemed to be clearly related to his breathing problems. However, his depression has also loomed as a greater and greater factor as time has gone on. But it seems to me Dr. Baldo is careful not to conclude that his depression is disabling. He didn't say that it prevents him from working, right? He just says it's becoming greater and greater. Well, Your Honor, I believe he says that the major reason for Mr. Baldoni's disability – So he does say, I believe as a fair reading of his report, that he is disabled. He doesn't say it. By the way, does Dr. Baldo identify himself as a physician? Is that correct? He's not a psychiatrist? He is a psychiatrist. He identifies himself as a physician, MD, physician. That's true. Well, except at the bottom of the letter it says he's a diplomat in the American Board of Psychiatry and Neurology. Yeah. Thank you, Your Honor. You have very good eyesight. At the very bottom of the page. He's also identified as a psychiatrist by the Oregon Board of Medical Examiners. All right. Okay. Okay. But I must say I am not familiar with – If you'd wrap up. I will. I'm not familiar with the body. But neither party can dictate the standard of review that this Court should use in determining this case. We can't stipulate to it. We can't dictate to it. I believe that I have preserved a heightened scrutiny by this Court in my submissions to the district court, including briefings and objections, and I would urge you to use a less deferential review. Thank you very much for your arguments. The case of Baldoni v. Unum Provident is now submitted for decision. We have one last case on the argument calendar this morning, and that's United States v. Baldoni.
judges: Noonan, Tashima, W. Fletcher,, Pollak